UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

ANGELO FERNANDEZ,                                  :

               Movant,                              :

   vs.                                                         :     Civil No.  1:18-cv-05568-PAE

                                        Crim No.  1:13-cr-00020-PAE-2

UNITED STATES OF AMERICA,               :

           Respondent.                     :

-----------------------------------------------------------x

RECEIVED
SDNY PRO SE OFFICE

2019 APR 23  PM 2: 21

S.D. OF N.Y.

USDC SONY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED : 4-22-19

## REPLY TO GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S MOTION FOR HABEAS CORPUS

       COMES Movant, ANGELO FERNANDEZ ("Fernandez"),  appearing *pro se,* and replies to

government's response ("GR") to Fernandez's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside

or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") as follows:

### PRELIMINARY STATEMENT

       As a preliminary matter, Fernandez requests that this Court be mindful that "[T]he filings of

a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal

construction." *Tracy v. Freshwater*, 623 F.3d 90 (2nd Cir. 2010); *Estelle v. Gamble*, 429 U.S. 97

(1976)(same); *Haines v. Kerner*, 404 U.S. 519 (1972). Secondly, Fernandez adopts by reference and

in whole his arguments previously filed in his § 2255 Motion. See Doc. 200.[1]

---

[1]

       "Doc." refers to the Docket Report in the United States District Court for the Southern
District of New York, Foley Square Division  in Criminal No. 1:13-cr-00020-PAE-2, which is
immediately followed by the Docket Entry Number.

## GOVERNMENT'S RESPONSE

The GR is divided into four (4) main sections: (1) Preliminary Statement; (2) Statement of Facts; (3) Argument; and (4) Conclusion. See Doc. 202. Fernandez will reply sequentially to each section of the GR as follows:

### Preliminary Statement and Statement of Facts

In these main sections of the GR, the government gives a fair and accurate reading of the procedural background in this case. *Id.* at 1-7. Fernandez does not object to this section of the GR, with the exception of the government's statement regarding overwhelming evidence of Fernandez's participation in (and control over) a long-running narcotics operation that crippled 1360 Plimpton Avenue in the Bronx. It is important to note that Fernandez, in his § 2255 Motion, argued that the evidence used in this case was obtained in violation of his Fourth, Fifth, and Sixth Amendment Rights.

### Argument

This main section of the GR is divided into two (2) subsections: (I) Fernandez Procedurally Defaulted His Prosecutorial Misconduct Claim; and (II) Fernandez's Defense Counsel Was Not Constitutionally Ineffective. *Id.* at 7-17. Again, Fernandez will reply sequentially to each subsection of the GR as follows:

## I.   FERNANDEZ PROCEDURALLY DEFAULTED HIS PROSECUTORIAL MISCONDUCT CLAIM

In this subsection of the GR, the government opined that Fernandez defaulted his prosecutorial misconduct claim because he failed to raise it on direct appeal. *Id.* at 7. Here, the government contends that Fernandez should have raised this issue before this Court in the first

instance or in his direct appeal. But because Fernandez's counsels were both ineffective, this particular issue was never raised.

In jurisprudence, prosecutorial misconduct is "an illegal act or failing to act, on the part of a prosecutor, especially an attempt to sway the jury to wrongly convict a defendant or to impose a harsher than appropriate punishment." It is similar to selective prosecution.

Four types of prosecutorial misconduct are offering inadmissible evidence in court, suppressing evidence from the defense, encouraging deceit from witnesses, and prosecutorial bluffing (threats or intimidation).

In this case, the government committed prosecutorial misconduct when it offered inadmissible evidence in court– evidence obtained from December 8, 2009 search of Liza Reyes' ("Reyes") apartment, in which the NYPD discovered, among other things, a firearm and a substantial amount of crack cocaine. On the said date, Diaz and Puente knocked on the door, and Liza Reyes answered. The men explained that they were looking for Fernandez and that they had information that he was storing a firearm inside. Without the presence of evidence of the crime is present in the place to be searched (only hearsay that Fernandez was storing a firearm), the NYPD had no probable cause or right to search Reyes' apartment. Moreover, there was no search warrant for Reyes' house and no arrest warrant for Fernandez.

Probable cause is a requirement found in the Fourth Amendment that must usually be met before police make an arrest, conduct a search, or receive a warrant. Courts usually find probable cause when there is a reasonable basis for believing that a crime may have been committed (for an arrest) or when evidence of the crime is present in the place to be searched (for a search). Under exigent circumstances, probable cause can also justify a warrantless search or seizure. Persons

arrested without a warrant are required to be brought before a competent authority shortly after the arrest for a prompt judicial determination of probable cause.

A lack of probable cause will render a warrantless arrest invalid, and any evidence resulting from that arrest (physical evidence, confessions, etc.) will have to be suppressed. See *Mapp v. Ohio*, 367 U.S. 643 (1961), at 648, 655. A narrow exception applies when an arresting officer, as a result of a mistake by court employees, mistakenly and in good faith believes that a warrant has been issued. In this case, notwithstanding the lack of probable cause, the exclusionary rule does not apply and the evidence obtained may be admissible. See *Ariz. v. Evans*, 514 U.S. 1 (1995) Unlike court clerks, prosecutors are part of a law enforcement team and are not "court employees" for purposes of the good-faith exception to the exclusionary rule. See *People v. Boyer*, 305 Ill. App. 3d 374 (1999), at 379-80.

## II.   FERNANDEZ'S DEFENSE COUNSEL WAS NOT CONSTITUTIONALLY INEFFECTIVE

The government in this subsection of the GR, contended that Fernandez's argument that his counsel rendered constitutionally ineffective assistance for failing to move to suppress evidence seized by the NYPD on December 8, 2009 from Reyes's apartment was misplaced for two reasons. See Doc. 202 at 11. First, any suppression motion would have been meritless in light of Reyes' written consent to search and Fernandez's prior sworn testimony that he lacked any connection to Reyes' apartment. Second, in light of the overwhelming evidence connecting Fernandez to the charged conspiracy, the jury's verdict would be the same and Fernandez's sentence would have been the same absent the December 8, 2009 evidence. Fernandez disagrees and the reasons are discussed below.

4

_Reyes' Written Consent to Search_

"It is well-settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." _Schneckloth v. Bustamonte_, 412 U.S. 218, 219 (1973)(citation omitted). When a law enforcement officer obtains valid consent to search a vehicle, neither reasonable suspicion, nor probable cause, is required. Thus, "in situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by valid consent may be the only means of obtaining important and reliable evidence." _Id_. at 227.

**Note:** In this case, there was no evidence of illicit activity (only hearsay), yet NYPD asked for Reyes' consent to search her house.

There are two requirements for a consent search to be valid. First, the consent must be voluntarily given. Both "the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." _Id_. at 228. In making this determination, courts will look at the "totality of the circumstances" surrounding the giving of the consent, because "it is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced." _Id_. at 223. Factors to consider in making this determination include, but are not limited to, the age, education, and intelligence of the individual [_id_. at 226]; the individual's knowledge of his or her right to refuse to give consent [_id_. at 2267]; whether the individual cooperated in the search [_United States v. Carrate_, 122 F.3d 666, 670 (8th Cir. 1997)(Suspect "idly stood by while the troopers searched his car, never indicating that he objected to the search")]; whether the suspect was in custody at the time the consent was given [_id_.]; the suspect's belief that no incriminating evidence will be found [_United States v. Asibor_, 109

5

F.3d 1023, 1038 n.14 (5th Cir.), cert. denied, 522 U.S. 902 (1997)(Explaining six factors analyzed to determine voluntariness of consent)]; the presence of coercive police procedures, such as displaying weapons or using force [*id.*]; and the suspect's experience in dealing with law enforcement officers [*United States v. Barnett*, 989 F.2d 546, 556 (1st Cir. 1993)].

The second requirement for a consent search is that the consent must be given by an individual with either actual or apparent authority over the place to be searched. "Actual" authority may be obtained "from the individual whose property is searched." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)(citation omitted)  Additionally, consent to search may be given by a third party "who possesses common authority over or other sufficient relationship to the ... effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974).

In 2005, the Connecticut Supreme Court determined it unlawful for a single occupant of a home to consent to a search without the consent of the other occupants (*State v. Brunetti*, 276 Conn. 40).

**Fact:** The USAO at the time when they procured the Indictment and conviction against Fernandez, had full knowledge of the following facts: 1) Fernandez never legally resided at 1360 Plimpton Ave.; 2) the detectives, who conducted the December 8, 2009 raid on Reyes' home never had probable cause for approaching the premise on that date; 3) the detectives never had legal authorization to conduct a search or seizure at the premises or make an arrest of Petitioner there;  4) the Superior Court of the Bronx had dismissed all charges against Fernandez relating to the evidence seized during the December 8, 2009 raid due to the inadmissibility of the evidence under New York State Law; and 5) Reyes and Fernandez were engrossed in a civil action against the City of New York and the detectives who conducted the raid and Fernandez's arrest on December 16, 2009.

Given these extraordinary and definitive facts, the USAO still elected to use the evidence obtained during December 8, 2009 raid.

### *Overwhelming Evidence Connecting Fernandez to the Charged Conspiracy*

Again, there was no overwhelming evidence presented in this case to indict Fernandez. The only evidence that led to Fernandez's Indictment was obtained from the December 8, 2009 raid of Reyes' home, which were inadmissible.

### *Ineffective Assistance of Counsel*

Unpreserved ineffective assistance claims generally cannot be raised on direct appeal because they usually involve questions of fact that are unresolved in the record (particularly the question of defense trial strategy). However, such issues may be raised if "the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue." *Blanco v. Wain-Wright*, 507 So. 2d 1377, 1384 (Fla. 1987).

There are two components to an ineffective assistance claim: "deficient performance" and "prejudice." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Ineffectiveness will be apparent on the face of the record only if both of these elements may be determined by the existing record. The prejudice component of the ineffectiveness claim should not be troublesome on direct appeal. Appellate courts routinely decide whether errors were harmless.

The prejudice analysis should be the same. If we phrase the ineffectiveness claim as "failure to preserve the issue," then the prejudice inquiry would require a determination whether the outcome would have been different had counsel preserved the issue. To determine this, we must assume the issue was preserved and apply standard harmless error analysis; this is the only way we can see what was lost by the failure to preserve. Thus, the prejudice inquiry in ineffective assistance claims should

7

be the same as in standard harmless error analysis.

With respect to the prejudice component, there is (or should be) no meaningful distinction between "preserved and harmful error" and "fundamental error." The lack of preservation does not change the harmless error analysis. Rather, it only imposes a threshold requirement bearing on that analysis: Is the existing record sufficiently complete to allow the appellate court to address the merits?

There is no meaningful distinction between fundamental error and ineffective assistance in this context. Inherent in any finding of fundamental error is a finding that there was no legitimate tactical reason for failing to raise the issue. This does not necessarily mean counsel was deficient; deficient performance also requires a showing that a reasonably competent lawyer would have raised the issue. But it is hard to imagine a set of facts in which a court would find an issue to be fundamental error but also conclude that trial counsel was not deficient for failing to raise it. See *Corzo*, 806 So. 2d at 645 n.2 (noting the "high correlation between errors that may be corrected as fundamental error. . . and errors that may be corrected as ineffective assistance of counsel on direct appeal").

*Goodwin* and *Maddox* both stressed the importance of the appellate role in protecting the defendant's constitutional right to a fair trial. That right includes effective assistance of counsel. If it is clear from the existing record that right was prejudiced because trial counsel was ineffective, the appellate court should reverse. Whether the basis for that reversal is called "ineffective assistance" or "fundamental error" is insignificant. See *Ross* , 726 So. 2d at 319; *Williams v. State*, 507 So. 2d 1122, 1125 n.8 (Fla. 5th D.C.A. 1987).

Cumulative Error

Under "cumulative error," unpreserved errors are attached to preserved errors and the cumulative effect of all the errors is considered when addressing the issue of harmlessness. Reversal is warranted if, as a result of the cumulative effect of the errors, "the integrity of the judicial process [was] compromised and the resulting convictions. . . irreparably tainted" *[Ruiz v. State*, 743 So. 2d 1, 8 (Fla. 1999)] or "[the defendant] was denied the fundamental right to due process and the right to a fair trial." [*State v. Townsend*, 635 So. 2d 949, 959–60 (Fla. 1994). Note the similarity in language to *Goodwin*'s discussion of harmless error and *Maddox's* discussion of fundamental error.

Recent cases relying on this theory usually involve trials riddled with prosecution misconduct, generally in closing argument. E.g. , Martinez v. State , 761 So. 2d 1074 (Fla. 2000). However, reversal is granted, not as punishment for the prosecutor, but because the trial was fundamentally unfair. E.g. , *Henry v. State*, 743 So. 2d 52, 54–55 (Fla. 5th D.C.A. 1999) (Harris, J., concurring specially). Further, prosecutorial misconduct is not a sine qua non; cumulative error may be found as to other combinations of issues as well. E.g. , *Townsend*, 635 So. 2d at 959–60.

These cases also recognize that prosecutors have ethical obligations beyond those of other trial attorneys; obligations that are, in effect, part of a defendant's constitutional right to a fair trial. That same constitutional right imposes greater responsibilities on trial courts to step in on their own, even without defense objections. These cases recognize that there are at least three lawyers involved in criminal prosecutions, and all have some duties to ensure that the trial is fair. E.g. , *D'Ambrosio v. State*, 736 So. 2d 44, 46–47 (Fla. 5th D.C.A. 1999)

Since the preserved error need not be harmful in itself, this basis for raising unpreserved issues blends into the other two bases just discussed. Indeed, if the preserved issue need not be

9

harmful itself, presumably unpreserved issues could be attached to any preserved issue, regardless of its lack of independent weight. These cases could easily be decided as "straight" fundamental error or on ineffectiveness grounds; the state misconduct noted in the cases is so obvious that defense counsel's failure to object should be facially apparent deficient performance. See *Bell v. State*, 723 So. 2d 896, 897 (Fla. 2d D.C.A. 1998).

In sum, these three lines of cases all address the same problem from different perspectives. The Constitution imposes certain procedural requirements in criminal cases, and trial judges, prosecutors, and defense counsel all bear some responsibility in ensuring that those requirements are met. Appellate courts' duty is to ensure the trial participants fulfilled their duties. If it is clear from the record that one or more of the trial participants failed, and the defendant was prejudiced thereby, the appellate court must reverse.

Nonetheless, Fernandez's trial counsel was ineffective for failing to file a Motion to Suppress Evidence and appellate counsel was ineffective for failing to raise prosecutorial misconduct on appeal.

## Conclusion

In its conclusion to the GR, the government urges the Court to deny Fernandez's § 2255 Motion. However, for the above and foregoing reasons, Fernandez should be eligible for evidentiary hearing so that Fernandez may further prove his meritorious grounds for relief, resolve facts in dispute and expand an incomplete record.

10

Respectfully submitted,

Dated: April 17, 2019.

_____

ANGELO FERNANDEZ
REG. NO. 68242-054
FCI POLLOCK
FEDERAL CORR. INSTITUTION
P.O. BOX 4050
POLLOCK, LA  71467
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I, Angelo Fernandez, hereby certify under the penalty of perjury pursuant to 28 U.S.C. § 1746, that on April 17, 2019, a true and correct copy of the above and foregoing Reply to Government's Memorandum of Law in Opposition to Petitioner's Motion for Habeas Corpus was placed in the mailbox invoking the prison mailbox rule and sent by U. S. Mail, postage prepaid, to A. Damian Williams, Assistant U. S. Attorney at Office of United States Attorney, One St. Andrew's Plaza, New York, NY 10007.

_____
ANGELO FERNANDEZ

11

ANGELO FERNANDEZ
REG. NO. 68242-054
FCI POLLOCK
FEDERAL CORR. INSTITUTION
P.O. BOX 4050
POLLOCK, LA  71467

RECEIVED
SDNY PRO SE OFFICE

2019 APR 23  PM 2: 21

S.D. OF N.Y.

April 17, 2019

Ms. Ruby J. Krajick
Clerk of Court
U. S. District Court
Southern District of New York
500 Pearl Street, Room 120
New York, NY 10007-1312

     RE:  *Fernandez v. United States*
           Civil No. 1:18-cv-05568-PAE
           Crim No. 1:13-cr-00020-PAE-2

Dear Ms. Krajick:

    Enclosed please find and accept for filing Movant's Reply to Government's Memorandum of Law in Opposition to Petitioner's Motion for Habeas Corpus. Please submit this document to the Court.

    Thank you for your assistance in this matter.

                    Sincerely,

                    ANGELO FERNANDEZ
                    Appearing *Pro Se*

*Encl. as noted*



Mr. Angelo Fernandez
Reg. No. 68242-054
Federal Correctional Institution Pollock
P.O. Box 4050
Pollock, LA 71467

USMP3
SDNY

RECEIVED
SDNY PRO SE OFFICE
2019 APR 23 PM 2:21
S.D. OF N.Y.

Ms Ruby J Krajick
Clerk of Court
United States District Court
Southern District of New York
500 Pearl Street, Room 126
New York, New York 10007-1312

CLERK'S OFFICE
S.D.N.Y.